# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL ANDREW LARGENT,
    Petitioner,

v.                                           Civil Action No.    3:04CV1
                                                 Criminal Action No.  3:02CR38

UNITED STATES OF AMERICA,
    Respondent.

## MEMORANDUM, OPINION, and REPORT AND RECOMMENDATION

### I. PROCEDURAL HISTORY

On January 5, 2004, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, along with a supporting memorandum of law, and affidavits of Gregory Williams and Tiffany Fargo.

By Order entered on February 26, 2004, the Court ordered the respondent to answer the motion. On April 26, 2004, the respondent filed Response of the United States to Petitioner's Motion Under 28 U.S.C. § 2255. On April 27, 2004, the respondent filed a Request of the United States for Disclosure of Pretrial Services' Records.

On May 10, 2004, the petitioner filed Petitioner's Request for Leave of this Court to Respond with a Traverse to the Response of the United States to Petitioner's Motion Under 28 U.S.C. § 2255. The Court granted the Petitioner's Request for Leave by Order entered on May 12, 2004.

On August 2, 2004, the petitioner filed a document titled "Petitioner Requests that this Honorable Court take Judicial Notice of the Supreme Court's Recent Decision that Implicates the

United States Sentencing Guidelines as it is Applicable to his Instant Case."[1]

On August 4, 2004, the respondent filed a Renewed Request of the United States for Disclosure of Pretrial Services' Records. On August 4, 2004, the respondent filed Response of the United States to Petitioner's Request that the Court Take Judicial Notice of the Supreme Court's Recent Decision that Implicates the United States Sentencing Guidelines as it is Applicable to his Instant Case. On August 16, 2004, the respondent filed Supplemental Response to Petitioner's Motion Under 28 U.S.C. § 2255. On August 19, 2004, the Court granted the Respondent's Request for Disclosure of Pretrial Services Records. On August 20, 2004, the respondent filed United States' Brief Response to Petitioner's Motion for Leave to Respond With a Traverse. On August 23, 2004, the petitioner filed a document titled Requesting Leave to File a Supplemental Reply to "Supplemental Response to Petitioner's Motion Under 28 U.S.C. § 2255." This motion was granted by Order entered on March 29, 2005.

Thus, this matter which is pending before me for initial review and report and recommendation pursuant to LR PL P 83.15, is ripe for review.

## A. <u>Conviction and Sentence</u>

On April 5, 2002, the petitioner signed a plea agreement in which he agreed to waive his right to have his case presented to a grand jury and to plead guilty to a one count information charging him with possession with the intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The plea agreement contained a waiver of the petitioner's appellate rights and his right to collateral attack his sentence or the manner in which it was determined.

---

[1] This motion (Doc. #21) was docketed as "Motion by Michael Andrew Largent to re-sentence."

On October 8, 2002, the Court held a plea hearing. During the plea hearing, the Court asked the petitioner if he had used any drugs within the previous 24 hours and the petitioner indicated he had used marijuana "yesterday."

Specifically, the following colloquy occurred:

| | |
|---|---|
| THE COURT: | Have you consumed any medicine, drugs, or alcohol within the last 24 hours? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And what was that for? |
| THE DEFENDANT: | Marijuana. |
| THE COURT: | Within the last 24 hours? |
| THE DEFENDANT: | Yes, yesterday. |
| THE COURT: | Yesterday you were smoking marijuana. |
| THE DEFENDANT: | Yes. |
| THE COURT: | Let me suggest to you, and I know we set this up on a rather short-term basis, from hereafter, if you want to receive the benefits of the plea agreement, as I'll explain to you later here today, you shouldn't use any illegal substances because it is going to get you in further trouble. Do you understand that? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Now, having smoked are [sic] marijuana yesterday, is that influencing the way you're thinking here today? In other words, do you have an are [sic] clear head, do you understand what's going on? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that having been placed under oath, you have an obligation to answer the Court's questions truthfully and completely? |
| THE DEFENDANT: | Yes. |

(Plea hearing tr. p. 4).

Subsequently, the Court continued with the plea hearing and concluded that the plea was knowing and voluntary. On January 7, 2003, the Court sentenced the petitioner to 168 months imprisonment. The petitioner did not appeal his conviction and sentence.

## B. **Federal Habeas Corpus**

### **The Petitioner's Contentions**

(1) Conviction obtained by guilty plea which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea while being under the influence of marijuana which I'd smoked at least a couple of ounces in the proceeding 24 hours before my scheduled Rule 11 [Guilty] plea hearing before the Honorable W. Craig Broadwater, United States District Judge.

(2) Denial of effective assistance of counsel - misadvise [sic] on available defense(s) and whether or not to testify, etc. Defense counsel did erroneously coerce me into accepting the Government's plea proffer, and likewise egregiously advised me against testifying at a potential trial proceeding, et. cetera.

**The Respondent's Contentions**

(1) The motion should be dismissed because the petitioner waived his right to appeal or collaterally attack his sentence.

(2) The petitioner did not raise the issue of the voluntariness of his plea in a direct appeal. Thus the issue is procedurally defaulted.

(3) The affidavits submitted by the petitioner do not indicate that the petitioner was not competent to enter a guilty plea.

(4) The Court properly conducted the Rule 11 Hearing.

(5) There is no evidence that the plea was involuntary.

(6) The petitioner has failed to establish that his attorney was ineffective.

**D. Recommendation**

Upon reviewing the record, I recommend that the petitioner's § 2255 motion be denied.

## II. ANALYSIS

**A. Waiver**

The respondent asserts that the petitioner's § 2255 motion should be denied because he

waived his right to appeal or collaterally attack his sentence. Waiver of appellate rights in a plea agreement is generally valid. United States v. Attar, 38 F.3d 727 (4th Cir. 1994), cert. denied, 514 U.S. 1107 (1995). Likewise, "[w]aiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001), cert. denied, 534 U.S. 1085 (2002). See also United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) and Butler v. United States, 173 F. Supp. 2d 489 (E.D. Va. 2001). The Fourth Circuit has not addressed waiver of the right to collaterally attack a sentence but has held regarding the waiver of the right to appeal that certain claims are excepted from the waiver. Specifically, claims of sentences in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor, United States v. Marin, 961 F.2d 493 (4th Cir.1992), claims for ineffective assistance of counsel during the plea or following entry of the plea, and claims challenging the voluntariness of the plea are not barred by the waiver. Attar, 38 F. 3d at 731-33. See also Butler, 173 F. Supp. 2d at 494.

The undersigned finds that the petitioner's claims of an involuntary guilty plea and ineffectiveness of counsel are not barred by the waiver and will be addressed below.

## B. Involuntary Plea

### 1. Procedural Bar

According to the respondent, the failure of the petitioner to raise the claim of an involuntary plea on direct appeal has resulted in the waiver of the issue.

The failure to raise a claim on direct appeal may result in a procedural default barring collateral review. Bousley v. United States, 523 U.S. 614 (1998). "In order to collaterally attack

5

a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas,186 F.3d 490, 492-493 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Id. at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494.

However, a claim of ineffective assistance of counsel can be raised in a § 2255 proceeding, even though the claim could have been, but was not raised on direct appeal. Massaro v. United States,123 S. Ct. 1690 (2003). See also, United States v. Richardson, 195 F.3d 192, 198 (4th Cir.1999) (providing standard and noting that ineffective assistance of counsel claims generally should be raised by motion under 28 U.S.C. § 2255 (2000)).

The petitioner states that he did not file a direct appeal because of ineffectiveness of counsel. However, the petitioner did not elaborate on this assertion. Thus, the undersigned finds that the petitioner has not shown cause or prejudice or actual innocence, and his claim regarding an involuntary plea is procedurally barred. Even if the claim were not procedurally barred, as discussed below, it is without merit.

## 2. Guilty Plea was not Involuntary

The petitioner asserts that when he told the Court that he had smoked marijuana it should have raised a "red flag" for the Court, but the Court "simply continued with the rest of the routine Rule 11 colloquy, without following up on the drug information or making any further inquiry into [his] mental state or the possibility that his judgement could be impaired."

Before a court accepts a guilty plea, the court must determine that the defendant is competent to enter the plea and that the plea is knowing and voluntary. Godinez v. Moran, 509 U.S. 389 (1997).

"Rule 11 counsels a district court to make further inquiry into a defendant's competence to enter a guilty plea once the court has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights." United States v. Damon, 191 F.3d 561, 564 (4th Cir. 1999) (quoting United States v. Cole, 813 F.2d 43, 46 (3d Cir.1987)).

In Damon, the defendant had attempted suicide just a few days prior to the plea hearing and had advised the court prior to the plea hearing that he was under "a lot of stress and pressure." He also advised the court that he was under the influence of antidepressant medication, and his counsel advised the Court that impaired judgment was a side effect of the medication. However, the district court "did not ask any follow up questions about whether the medication had any actual effect on [the defendant's] ability to enter a competent and voluntary plea." Damon, 191 F.3d at 563. Thus, the Fourth Circuit found the district court violated Rule 11 by not making such inquiry and remanded the case to the district court for a determination as to whether any medication the defendant was taking had the capacity to impair his judgment such that he was incapable of

rendering a knowing and voluntary plea.

Here, the Court complied with Rule 11. During the petitioner's plea hearing, Judge Broadwater inquired regarding what drugs, if any, the petitioner had taken prior to the hearing. In response to Judge Broadwater's question, the petitioner acknowledged that within 24 hours of the plea hearing, he had smoked marijuana. However, unlike the Damon case, Judge Broadwater asked the petitioner whether he had a clear head and whether he understood what was going on. The petitioner stated that he did. Consequently, the Court did not need to make further inquiry into the petitioner's use of marijuana and what effect, if any, the marijuana had on him. Thus, the petitioner's reliance on Damon is misplaced. Moreover, satisfied that the petitioner's marijuana use did not impair his judgement, the Court continued its colloquy. Upon further questioning, the petitioner also stated that he fully understood the charges against him, he was guilty of the relevant count, he understood and agreed with the terms of the written plea agreement, his plea was voluntary and entered without coercion, he had ample time to discuss his case with his counsel, and he was satisfied with counsel's services.

"Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992). And, "findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea. United States v. Lambey, 949 F. 2d 133, 137 (4th Cir. 1991) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).

The petitioner is bound by his statements that he had a clear head and the numerous statements throughout his plea hearing which revealed that his plea was knowing and voluntary.

Moreover, the petitioner has failed to meet his burden of demonstrating that "his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." See United States v. Truglio, 493 F.2d 574, 579 (4th Cir. 1974) (quoting United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970)).

In fact, the petitioner only states that he smoked marijuana in the 24 hours before his plea hearing. Further, the affidavits he submitted of Gregory Williams, his cousin by marriage, and Tiffany Fargo, an ex-girlfriend, do not reveal he was incompetent to enter a plea. Mr. Williams and Ms. Fargo stated that the petitioner purchased two ounces of "chronic-hydro" marijuana in the 24 hours proceeding October 8, 2002, and he smoked and inhaled the entire two ounces. These affidavits provide no further information and do not prove that the petitioner was incompetent to enter a guilty plea. Further, during the sentencing hearing, the petitioner gave an extensive allocution in which he admitted to selling drugs and expressed remorse for doing so. Significantly, at no point prior to filing his § 2255 motion, did the petitioner contend he was unable to understand his plea because of the marijuana he had smoked prior to the plea hearing.

Additionally, the respondent argued in its Supplemental Response to Petitioner's Motion Under 28 U.S.C. § 2255 that the Probation Office collected a urine specimen from the petitioner on October 10, 2002, two days after the plea hearing. The results of the testing performed on October 15, 2002, were negative. While the petitioner alleges that he smoked marijuana the day before his plea hearing, the respondent asserts that the test results contradict such allegation, and that medical evidence indicates that traces of marijuana remain in the smoker's system for several weeks. Thus, the respondent asserts that the petitioner and his two witnesses have provided false

information.

The petitioner admits that he gave the urine sample, but asserts that the test was negative because his metabolism is fast, not because he did not smoke marijuana.

The undersigned finds that the petitioner has not introduced any evidence which demonstrates that his alleged smoking of marijuana impaired his ability to enter a plea. Further, the petitioner has not submitted any evidence, or referred the Court to any medical studies, which indicates that traces of marijuana do not remain detectable for several weeks. Therefore, the petitioner's claim that his plea was not voluntary and knowing because he was under the influence of marijuana, and that the Court failed to properly conduct the Rule 11 hearing is without merit.

## C. Ineffective Assistance of Counsel

The petitioner asserts that his attorney was ineffective because he misadvised him as to available defenses and whether to testify in a potential trial, and coerced him to accept a plea agreement.

With regard to claims of ineffective assistance of counsel, counsel's conduct is measured under the two part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90.

Second, the petitioner must be prejudiced by counsel's performance. In order to

demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

In evaluating a post guilty plea of ineffective assistance of counsel, statements made under oath affirming satisfaction with counsel are binding, absent clear and convincing evidence to the contrary. Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988).

The petitioner does not meet his burden because he does not indicate that but for his attorney's alleged errors he would have proceeded to trial instead of pleading guilty. Nor does the petitioner met the Strickland standard. In fact, the petitioner does not sufficiently plead his claim of ineffective assistance of counsel.

Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). The petition must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F. 2d 1125 (4th Cir. 1992), cert. denied, 507 U.S. 923 (1993), abrogation on other grounds recognized, Yeatts v. Angelone, 166 F. 3d 255 (4th Cir. 1999).

He does not indicate what misadvice his attorney gave him and how such prejudiced him. Moreover, he testified during the plea hearing that he was not coerced to plead guilty and that his attorney had adequately represented him. The petitioner is bound by the representations he made under oath during a plea colloquy. Consequently, the undersigned finds that the petitioner's claim of ineffective assistance of counsel is without merit.

### D. Blakely Claim

On August 2, 2004, the petitioner filed "Petitioner Requests that this Honorable Court take Judicial Notice of the Supreme Court's Recent Decision that Implicates the United States Sentencing Guidelines as it is Applicable to his Instant Case." (Doc. #21). It appears to the undersigned that the petitioner is arguing that his sentence violates Blakely v. Washington, 124 S. Ct. 2531 (2004) because "he never once admitted any of the aggravating factos" which the Court used to enhance his sentence.

Blakely, as an extension of Apprendi v. New Jersey, 530 U.S. 466 (2000), holds that "when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." Blakely, 124 S. Ct. at 2537 (citations omitted).

Recently, the Supreme Court has held that Blakely applies to federal sentencing guidelines. United States v. Booker, 125 S. Ct. 738 (2005). Specifically, in Booker the Supreme Court issued a two part decision. In the first part, the Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial because a judge, not a jury, determines facts which could increase the defendant's sentence beyond the sentence which could

be imposed based on jury fact finding. In the second part of the decision, the Supreme Court severed the unconstitutional provisions from the Sentence Reform Act and made the guidelines advisory and established an unreasonableness standard of review for sentences on appeal. While the Supreme Court determined that both of its holdings in Booker applied to all cases on direct review, the Supreme Court did not address whether Booker applies retroactively to cases on collateral review.

However, the United States Supreme Court addressed the question of retroactivity regarding cases on collateral review, such as a § 2255 motion, in Teague v. Lane, 489 U.S. 288 (1989). In Teague, the Court held that, absent exceptional circumstances, the general rule is that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Id. at 310. A conviction is final if "the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petitioner of certiorari had elapsed." Id. at 295.

In the instant case, at the time the Supreme Court issued the Booker decision, the petitioner's conviction was final. Thus, the undersigned must determine whether Booker applies retroactively to the petitioner's § 2255 motion. The undersigned finds that a decision from the Western District of Virginia, Lilly v. United States, 342 F. Supp. 2d 532 (W.D. Va. 2004), is instructive on the retroactivity issue. In Lilly, the district court addressed the retroactivity of Blakely and found that even if the Supreme Court held that the federal guidelines violated the Sixth Amendment, such ruling would not apply retroactively to cases on collateral review. In reaching this determination, the Lilly court stated as follows:

In any case in which a petitioner wishes to make a claim based on a case decided by the Supreme Court after her conviction became final, the petitioner must show that the Supreme Court decision announced a new rule and that the new rule is retroactive to cases on collateral review. See Teague at 308, 109 S. Ct. 1060 (noting that "it has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule").

In order to show that a Supreme Court decision announced a new rule, the petitioner must show that "the result was not *dictated* by precedent existing at the time the defendant's conviction became final." Id. at 301, 109 S. Ct. 1060. It seems clear from the reaction of the courts of appeals following Apprendi that it was not obvious that Apprendi required that sentencing enhancements, like those in the case at bar or in Blakely, must be found beyond a reasonable doubt by a jury. . . .It appears that this interpretation constitutes a new rule for purposes of determining retroactivity to cases on collateral review. Therefore, it becomes necessary to analyze this new rule under Teague.

Once it has been determined that the Supreme Court announced a new rule, it is only in a narrow class of cases that the new rule will apply retroactively to cases on collateral review. See Schriro v. Summerlin, 124 S. Ct. 2519, 2522, 159 L. Ed.2d 442 (2004). The petitioner must either show that the new rule is substantive, rather than procedural, see id., or show that the new rule is a "watershed rule[ ] of criminal procedure." Id. at 2523 (internal quotation reference omitted).

In Summerlin, the Court found that Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002), a case that extended Apprendi to aggravating factors in capital cases, was a new procedural rule and was not retroactive. 124 S. Ct. at 2526-27. A similar analysis dictates that Blakely announced a new procedural rule and is similarly non-retroactive.

In determining if a rule is substantive, a court must look for evidence that the rule "alters the range of conduct or the class of persons that the law punishes." Id. at 2523. The decision in Blakely did not change the type of conduct or the class of persons that the law punishes. Rather, the decision required either that a defendant admit or a jury find beyond a reasonable doubt all facts used to enhance a sentence above the statutory maximum. The procedure relating to how those facts were determined, a preponderance-of-the-evidence standard by a judge or a beyond-a-reasonable-doubt standard by a jury, is what was at issue in Blakely. Therefore, Blakely announced a new procedural rule.

* * *

In a very narrow core of cases, a procedural rule can be retroactive. This exception to the normal Teague rule is very rare, only occurring for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."124 S. Ct. at 2524 (internal quotation reference omitted). Under Teague, this exception applies only "to those new procedures without which the likelihood of an accurate *conviction* is seriously diminished." Teague, 489 U.S. at 313, 109 S. Ct. 1060 (emphasis added). . . .

14

In Summerlin, the Court determined that the watershed question in Ring was "whether judicial factfinding so *seriously* diminishe[s] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." 124 S. Ct. at 2525 (internal quotation reference omitted). The Supreme Court answered this question in the negative in its analysis of Ring. Id. The main difference between Ring and Blakely in this regard is the fact that Ring only dealt with the factfinder, while Blakely deals with both the factfinder and the standard of proof. Therefore, I must also determine whether or not the standard of proof in Blakely implicates the accuracy of the conviction impermissibly and thus requires retroactive application of the new rule to cases on collateral review.

The Supreme Court's determination that Ring is not retroactive is particularly instructive in analyzing Blakely because both Ring and Blakely are extensions of Apprendi. In fact, Ring and Apprendi are so closely related that Justice O'Connor opined that the Court's holding in *Summerlin* that Ring was not retroactive, applied even more strongly to Apprendi. See Blakely v. Washington, 124 S. Ct. at 2549 (O'Connor, J., dissenting). This would harmonize the Supreme Court with the courts of appeals, all of which have previously found that Apprendi did not apply retroactively to cases on collateral review. [footnote omitted].

***

The Supreme Court has noted that the watershed exception is an extremely narrow one. The Court stated that because "such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." Graham v. Collins, 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (internal quotation reference omitted). In fact, the Supreme Court has not found a rule to be retroactive since the Court decided Teague in 1989. See United States v. Mandanici, 205 F.3d 519, 529 (2d Cir.2000) (citing eleven examples of new rules or proposed new rules in which the Supreme Court declined to find retroactivity). For these reasons, I find that Blakely is a new procedural rule that does not meet the requirement of being a watershed rule of criminal procedure. This holding is in line with other federal district courts that have addressed this issue. Therefore, even assuming that Blakely invalidates sentences under the USSG, it will not apply retroactively to cases on collateral review.

Id. at 536-539). See also, In re Anderson, 396 F. 3d 1336 (11th Cir. 2005) (denied the petitioner's motion for leave to file a second or successive § 2255 motion because the Supreme Court has not made Booker retroactive to cases on collateral review); United States v. Price, 2005 WL 535361 (10th Cir. 2005) (Booker is a new procedural rule which does not apply retroactively); McReynolds

15

v. United States, 397 F. 3d 479 (7th Cir. 2005) (Booker does not apply retroactively to initial §2255 motions as it is not a watershed rule of criminal procedure); Humphress v. United States, 2005 WL 433191 (6th Cir. 2005) (Booker is a new procedural rule which does not fall within the Teague exceptions to the nonretroactivity rule); Quiron v. United States, 2005 WL 83832 (D. Me January 14, 2005) (citing Lilly and finding Booker does not apply retroactively); Rucker v. United States, 2005 WL 331336 (D. Utah 2005); United States v. Johnson, 353 F. Supp. 2d 656 (E.D. Va. 2005) (the petitioner's § 2255 motion may be dismissed as untimely because Booker does not apply retroactively to collateral review).

However, in United States v. Siegelbaum, 2005 WL 196526 (D. Or. 2005), Judge Panner of the United States District Court for the District of Oregon could not "exclude the possibility that the Court might apply Blakely/Booker retroactively in some situations." According to Judge Panner, Summerlin did not foreclose the retroactive application of Booker because Summerlin "addressed only the allocation of factfinding responsibility between the judge and jury. There is a second component to Blakely/Booker that Schiro did not address, namely, that facts used to enhance a sentence, if not admitted, must be proved beyond a reasonable doubt rather than by a preponderance of the evidence." Judge Panner seems to opine that under Supreme Court precedent, In re Winship, 397 U.S. 358, 363 (1970), Ivan V. v. City of New York, 407 U.S. 203, 205 (1972), and Hankerson v. North Carolina, 432 U.S. 233 (1977), and the opinions of five of the Supreme Court justices, that the reasonable doubt standard applies to sentence enhancements, and thus, the application of the reasonable doubt standard would require retroactive relief. However, Judge Panner did not decide the retroactivity issue.

Despite Judge Panner's thoughts on retroactivity, the undersigned finds that based on

Summerlin, Lilly, and McReynolds, Booker, as an extension of the reasoning in Apprendi, should also be barred from retroactive application on collateral review in a § 2255 motion.

Additionally, the Supreme Court has held in a case involving a successive petition, for purposes of 28 U.S.C. § 2244(b)(2)(A), that only the Supreme Court could declare that a new rule of constitutional law is retroactively applicable to collateral review. See Tyler v. Cain, 533 U.S. 656 (2001). The Fourth Circuit has not limited Tyler to 2244(b)(2)(A) issues and has extended its reasoning to initial §2255 motions, as well. See San-Miguel v. Dove, 291 F.3d 257, 260 (4th Cir. 2002). See also Beamon v. United States, 189 F.Supp.2d 350 (E.D. Va.2002) (applying Tyler to discussion of whether Apprendi applies retroactively to initial § 2255 motion). Accordingly, based on the reasoning in Tyler, Dove, and Beamon, the undersigned recommends that Booker be disallowed from retroactive application on collateral review, and that the petitioner's Blakely/Booker claim be denied.

### E. **Motion for Evidentiary Hearing**

The petitioner seeks an evidentiary hearing.

28 U.S.C. § 2255 provides in pertinent part as follows:

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

See also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000); United States v. Magini, 973 F.2d 261, 264 (4th Cir.1992) ( "a federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle [him] to relief").

The petitioner's § 2255 motion and the respondent's response conclusively establish that

the petitioner is entitled to no relief. Thus, the petitioner is not entitled to an evidentiary hearing.

F. **Motion for Appointment of Counsel**

In his supporting memorandum, the petitioner requested that he be appointed counsel. The authority for the Court to appoint counsel in a § 2255 action is discretionary and there is no Constitutional right to have appointed counsel in post conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551 (1987).

A Court may appoint counsel to a financially eligible person if justice so requires in a § 2255 action. See 28 U.S.C. § 2255; 18 U.S.C. § 3006A. Appointment of counsel for a petitioner who qualifies for the appointment of counsel under 18 U.S.C. § 3006A, is only required in a § 2255 action when necessary for utilization of discovery procedures and when an evidentiary hearing is required. See Rules 6(a) and 8(c) of the Rules Governing Section 2255 cases in the United States District Courts. Upon review of the file, I have concluded that the issues in this matter are not complex, that this matter does not require discovery or an evidentiary hearing, and that the petitioner has not demonstrated circumstances which demonstrate the need for appointment of counsel. Accordingly, the petitioner's motion for appointment of counsel should be DENIED.

## III. RECOMMENDATION

The undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion without an evidentiary hearing, **DENYING** "Petitioner Requests that this Honorable Court take Judicial Notice of the Supreme Court's Recent Decision that Implicates the United States Sentencing Guidelines as it is Applicable to his Instant Case" because Blakely and Booker do not apply retroactively and **DENYING** the petitioner's request for counsel.

Any party may file within ten (10) days after being served with a copy of this Memorandum

Opinion and Report and Recommendation with the Clerk of the Court written objections identifying the portions of the Memorandum Opinion and Report and Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of Court is directed to mail a copy of this Memorandum Opinion and Report and Recommendation to the *pro se* petitioner and the United States Attorney for the Northern District of West Virginia.

Dated: March 29, 2005

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE